UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
SAGUN TULI, M.D.                                          )
     Plaintiff                                            )     Case No. 1:13-cv-11023-MLW
             v.                                            )
GARY M. VOTOUR, and                                      )
AUTOMATTIC, INC.                                         )
     Defendants                                          )
_____)

**MEMORANDUM IN SUPPORT OF MR. VOTOUR'S MOTION FOR
JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ...................................................................................................1

II.    ALLEGATIONS OF THE COMPLAINT..............................................................2

    A.    The Parties ................................................................................................2

    B.    Ms. Votour's Illness, Treatment, and Death ............................................2

    C.    Dr. Tuli Refuses to Speak with Mr. Votour, and He Writes The Blog....................4

III.   ARGUMENT ........................................................................................................6

    A.    Standards Governing Motions for Judgment on the Pleadings................................6

    B.    Standards Governing Defamation Claims Under Massachusetts Law ...................7

        1.    Statements That Are Not Susceptible of a Defamatory Meaning Are Not Actionable ...........................................................................7

        2.    Statements of Opinion Are Not Actionable ................................................8

    C.    Each of the Challenged Statements is Inactionable .............................................10

        1.    Statement 1 is Not Defamatory and is an Opinion ...................................10

        2.    Statement 2 is Not Defamatory and is an Opinion ...................................13

        3.    Statement 3 is Not Defamatory and is an Opinion ...................................14

        4.    Statement 4 is Not Defamatory and is an Opinion ...................................15

        5.    Statement 5 is Not Defamatory and is an Opinion ...................................16

        6.    Statement 6 is an Opinion .......................................................................17

    D.    Alternatively, the Incremental Harm Doctrine Bars Plaintiff's Suit.....................18

IV.   CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aldoupolis v. Globe Newspaper Co.*,
    398 Mass. 731 (1986) ............................................................................................8

*Amrak Prods., Inc. v. Morton*,
    410 F.3d 69 (1st Cir. 2005)....................................................................................7

*Ball v. Wal-Mart, Inc.*,
    102 F. Supp. 2d 44 (D. Mass. 2000) ......................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................6

*Bose Corp. v. Consumers Union*,
    692 F.2d 189 (1st Cir. 1982)..................................................................................8

*Brown v. Hearst Corp.*,
    54 F.3d 21 (1st Cir. 1995)....................................................................................19

*Church of Scientology Int'l v. Time Warner, Inc.*,
    932 F. Supp. 589 (S.D.N.Y. 1996)......................................................................18

*Cole v. Westinghouse Broad. Co.*,
    386 Mass. 303 (1982) .........................................................................................8, 9

*Damon v. Moore*,
    520 F.3d 98 (1st Cir. 2008)....................................................................................7

*DeMayo v. Nugent*,
    517 F.3d 11 (1st Cir. 2008) ...................................................................................2

*Doe v. Cahill*,
    884 A.2d 451 (Del. 2005) .......................................................................................9

*Flotech, Inc. v. EI Du Pont de Nemours & Co.*,
    814 F.2d 775 (1st Cir. 1987)..................................................................................9

*Foley v. Lowell Sun Publ'g Co.*,
    404 Mass. 9 (1989) ........................................................................................ passim

*Garrett v. Tandy Corp.*,
    295 F.3d 94 (1st Cir. 2002)....................................................................................9

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)...............................................................................................8

*Global Telemedia Int'l, Inc. v. Doe*,
   132 F. Supp. 2d 1261 (C.D. Cal. 2001) ............................................................9

*Gonzalez v. Gray*,
   69 F. Supp. 2d 561 (S.D.N.Y. 1999)..........................................................9, 17, 18

*Grajales v. P.R. Ports Authority*,
   682 F.3d 40 (1st Cir. 2012)........................................................................2, 6

*Greenbelt Coop. Publ'g Assn., Inc. v. Bresler*,
   398 U.S. 6 (1970)....................................................................................18

*Greenspan v. Random House, Inc.*,
   859 F. Supp. 2d 206 (D. Mass. 2012) ..........................................................8

*Jackson v. Longcope*,
   394 Mass. 577 (1985) ..............................................................................19

*Letter Carriers v. Austin*,
   418 U.S. 264 (1974).................................................................................18

*Levinsky's, Inc. v. Wal-Mart Stores, Inc.*,
   127 F.3d 122 (1st Cir. 1997)......................................................................8

*Mandel v. Boston Phoenix, Inc.*,
   456 F.3d 198 (1st Cir. 2006)......................................................................19

*McKee v. Laurion*,
   825 N.W.2d 725 (Minn. 2013)............................................................... passim

*Metcalf v. KFOR-TV, Inc.*,
   828 F. Supp. 1515 (W.D. Okla. 1992) ...............................................11, 15, 16, 17

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990).................................................................................8, 11

*Moldea v. New York Times Co.*,
   22 F.3d 310 (D.C. Cir. 1994)......................................................................11

*Myers v. Boston Magazine Co.*,
   380 Mass. 336 (1980) ............................................................................8, 14

*Noonan v. Staples*,
   556 F.3d 20 (1st Cir. 2009).......................................................................19

*Noonan v. Staples, Inc.*,
   707 F. Supp. 2d 85 (D. Mass. 2010) ...........................................................19

*Partington v. Bugliosi,*
    56 F.3d 1147 (9th Cir. 1995) ...................................................................................10, 11, 13

*Phantom Touring, Inc. v. Affiliated Publ'ns,*
    953 F.2d 724 (1st Cir. 1992)..........................................................................8, 11, 13, 14

*Phelan v. May Department Stores Co.,*
    443 Mass. 52 (2004) ................................................................................................................7

*Quilici v. Second Amendment Found.,*
    769 F.2d 414 (7th Cir. 1985) ..............................................................................................11

*Reilly v. Associated Press,*
    59 Mass. App. Ct. 764 (Mass. App. Ct. 2003).........................................................7, 10, 18

*Riley v. Harr,*
    292 F.3d 282 (1st Cir. 2002).............................................................................10, 12, 13, 17

*Robinson v. Globe Newspaper Co.,*
    26 F. Supp. 2d 195 (D. Me. 1998) ......................................................................................19

*Rocker Mgmt., LLC v. Doe,*
    2003 WL 22149380 (N.D. Cal. May 29, 2003) ....................................................................9

*Scholz v. Delp,*
    2013 Mass. App. LEXIS 83 (Mass. App. Ct. May 14, 2013) ..............................................12

*Seelig v. Infinity Broad. Corp.,*
    97 Cal.App.4th 798, 119 Cal.Rptr.2d 108 (2002).............................................................12

*SPX Corp. v. Doe,*
    253 F. Supp. 2d 974 (N.D. Ohio 2003) ................................................................................9

*Tener v. Cremer,*
    2012 N.Y. Misc. Lexis 3721, 2012 NY Slip. Op. 32022 (N.Y. Sup. Ct. Aug. 1, 2012) ..........9

*Tuli v. Brigham & Women's Hosp.,*
    566 F. Supp. 2d 32 (D. Mass. 2008) ....................................................................................2

*Tuli v. Brigham & Women's Hosp.,*
    592 F. Supp. 2d 208 (D. Mass. 2009) ..................................................................................2

*Tuli v. Brigham & Women's Hosp.,*
    656 F.3d 33 (1st Cir. 2011)...............................................................................................2, 5

*Von Saher v. Norton Simon Museum of Art,*
    592 F.3d 954 (9th Cir. 2010) ...............................................................................................20

*Yohe v. Nugent*,
  321 F.3d 35 (1st Cir. 2003) ....................................................................................................9

**OTHER AUTHORITIES**

Rodney A. Smolla, *Law of Defamation* ........................................................................................19

## I.     INTRODUCTION

In the summer of 2008, Defendant Gary Votour lost his wife of twenty-eight years after a protracted battle with a rare form of cancer, several strokes, a number of surgeries, and other illnesses.  Two years after her death, Mr. Votour, still in mourning, sought an hour of time from Plaintiff Sagun Tuli – a neurosurgeon who treated Ms. Votour and who was performing surgery on her when she suffered a debilitating stroke – to assist him in coping with his loss.  Dr. Tuli refused to meet with Mr. Votour, explaining that such a meeting was not in her best interests.

With no outlet for his grief, Mr. Votour took to the internet where he posted a lengthy blog entitled "Open Letter to Sagun Tuli."  Across twenty pages, Mr. Votour recounted the excruciating details of his wife's illness, shared personal anecdotes about his beloved wife, and expressed his sadness caused by his loss.  In addition, he voiced his frustrations about Dr. Tuli's refusal to speak with him and explained his dissatisfaction with the manner of treatment that she provided to his wife after her surgery, care that Mr. Votour felt was, in his opinion, callous and lacking in compassion.  Mr. Votour stressed that his blog reflected "*simply the opinions of Gary Votour*."  Mr. Votour also made clear that he did not blame Dr. Tuli for his wife's strokes.

Immediately after Mr. Votour posted his blog, Dr. Tuli's lawyers sent him a threatening letter demanding that he retract the blog.  Mr. Votour refused.  Nearly three years later – and without any further communications – Dr. Tuli's new attorneys filed this suit in an attempt to force him to remove the blog.  Mr. Votour has since done so – though Mr. Votour denies that anything in his blog was defamatory – replacing it with a simple message: "I forgive her."

Notwithstanding this fact, Dr. Tuli has elected to proceed with this suit.  She alleges that six statements from the now-removed blog, divorced from the context of the lengthy post, somehow caused her substantial harm.  However, as explained below in greater detail, each of the six statements challenged by Dr. Tuli is not actionable as a matter of law, because it is a

- 1 -

statement of opinion and/or incapable of conveying a defamatory meaning.[1]  Therefore, Mr.

Votour asks this Court to enter judgment in his favor at this nascent phase of the litigation.

## II.    ALLEGATIONS OF THE COMPLAINT[2]

### A.    The Parties

Plaintiff Sagun Tuli is a neurosurgeon who previously worked at Brigham and Women's

Hospital in Boston.  (Compl. ¶¶ 1, 4.)  She is no stranger to litigation in this Court, having

previously sued her former employer and another doctor for discrimination.[3]  Dr. Tuli performed

a complicated and rare surgical procedure on the wife of Defendant Gary Votour.

Mr. Votour, who now lives in South Carolina, has a Master's degree in Health Care

Administration, and he operates as a health care patient advocate and writes a blog about health

care ethics.  (Compl. ¶ 5; Compl. Ex. A at 2-4.)  In March 2010, after his wife passed away, Mr.

Votour penned an internet blog entitled "Open Letter to Sagun Tuli."  (Compl. ¶¶ 5, 7.)

### B.    Ms. Votour's Illness, Treatment, and Death

The events leading up to Mr. Votour's decision to write this blog are profoundly sad.  In

March 2008, Mr. Votour's wife, Charlyn "Lyn" Votour, was involved in a car accident on her

way to work.  (Compl. Ex. A at 9.)  An x-ray revealed that Ms. Votour had a fracture or a lesion

in her C2 vertebra, the second vertebra in her spine that is located in the neck, just below the

skull.  (*Id.* at 9-10.)  However, after several months, the fracture was not healing properly.  (*Id.* at

---

[1]     Mr. Votour also alternatively submits that the "incremental harm" doctrine bars this suit.  *See infra* at 18-20.

[2]     The following allegations are taken from the pleadings and from materials incorporated in the Complaint. *Grajales v. P.R. Ports Authority*, 682 F.3d 40, 44 (1st Cir. 2012) (stating that on Rule 12(c) motion, court may consider the Complaint and "data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."); *see also DeMayo v. Nugent*, 517 F.3d 11, 13 (1st Cir. 2008).  For this motion, Mr. Votour assumes that well-pleaded allegations are true.  *Grajales*, 682 F.3d at 44-45.

[3]     Dr. Tuli's suit against this hospital was very public and high profile (Compl. Ex. A at 23, 26) and, by all accounts, very acrimonious.  *See generally Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33 (1st Cir. 2011); *Tuli v. Brigham & Women's Hosp.*, 592 F. Supp. 2d 208 (D. Mass. 2009); *Tuli v. Brigham & Women's Hosp.*, 566 F. Supp. 2d 32 (D. Mass. 2008).  This suit took place at the same time that Mr. Votour wrote his blog, and the underlying issues that gave rise to the suit occurred at the time that Dr. Tuli treated Ms. Votour.

10.)  After many tests, an orthopedic oncologist at Brigham and Women's Hospital discovered that the lesion was chordoma, a rare and deadly form of bone cancer.  (*Id.* at 11; Compl. ¶ 1.)

Ultimately, the Votours were referred to the neurosurgical department at Brigham and Women's Hospital for treatment.  There, Dr. Tuli, whom Mr. Votour would later describe in his blog as "a neurosurgeon with an excellent reputation," and other doctors recommended an aggressive course of treatment whereby Dr. Tuli would perform a two-step surgery to remove Ms. Votour's vertebra (a procedure known as a chordectomy).  (Compl. Ex. A at 11, 13.)  This procedure was risky and rare; it had only been attempted at a handful of hospitals, and it had never been done by Dr. Tuli.  (*Id.* at 11.)

In January 2006, Ms. Votour underwent her first surgery to remove the rear half of her C2 vertebra.  (*Id.* at 13.)  The first surgery was a success, and Ms. Votour then went in for a second operation to remove the front portion of the C2 vertebra.  Dr. Tuli removed the remainder of Ms. Votour's C2 vertebra, but during the surgery, Ms. Votour suffered a pair of strokes that destroyed approximately twenty-five percent of her brain, paralyzing her motor control on her left side and devastating the portion of the brain where emotion resides.  (*Id.* at 13-15.)

During the ensuing two-and-a-half years, Ms. Votour suffered a series of cascading, and ultimately fatal, complications.  Skin tissue on her buttocks became necrotic after the surgeries, leaving an open wound.  Fearing that this wound would get infected, doctors inserted a fecal tube into Ms. Votour's colon.  This procedure, in turn, led to bowel obstructions that destroyed her colon, which ultimately needed to be removed.  While recovering from this surgery, Ms. Votour suffered a number of infections.  Ms. Votour eventually returned home, but she remained under the constant care of her dedicated husband and home medical staff.  (*Id.* at 15-22.)

By the summer of 2008, Ms. Votour's pain had become intolerable and she became depressed.  She asked her husband to remove her feeding tube to let her die peacefully at home.  Mr. Votour complied with her wishes.  After seventeen days, Ms. Votour passed away.  (*Id.* at 22.)

### C.      Dr. Tuli Refuses to Speak with Mr. Votour, and He Writes The Blog

In 2010, nearly two years after his wife's death and approximately four years after Dr. Tuli operated on Ms. Votour, Mr. Votour, still mourning the loss of his wife, decided to contact the hospital to speak with Dr. Tuli in order to express his grief and sorrow.  (Compl. Ex. A at 23-24.)  Dr. Tuli refused this request through the hospital's patient relations department, offering only that such a meeting was not in her best interests.  (*Id.* at 23.)  Rebuffed, and with no other outlet for his sorrow, Mr. Votour decided to write a blog, entitled "Open Letter to Sagun Tuli," to express his sadness.  (Compl. ¶¶ 2, 8; Compl. Ex. A at 23-24, 27.)  This "Open Letter" was published on the popular internet blogging site Wordpress on March 2, 2010.  (Compl. ¶¶ 6-7.)

In the blog – a lengthy stream-of-consciousness polemical grief piece and testimonial to his wife – Mr. Votour recounted his wife's illness and treatment, detailed her suffering and their mutual sacrifice, and shared touching stories about his beloved wife.  (*See generally* Compl. Ex. A.)  He also vented about Dr. Tuli's refusal to speak with him and expressed his dissatisfaction with the manner of care that she provided after his wife's chordectomy, care that Mr. Votour felt was, in his opinion, insensitive and compassion-free.  (Compl. Ex. A at 24.)  Mr. Votour stressed that the blog reflected "*simply the opinions of Gary Votour*."  (Compl. Ex. A at 28.)  Mr. Votour also repeatedly emphasized that he did not blame Dr. Tuli for his wife's strokes.  (Compl. Ex. A at 16 ("Lyn and I did not blame [Dr. Tuli]" for the strokes); Compl. Ex. A at 24 ("I do not blame her for the strokes."))  He never sued Dr. Tuli for malpractice.  (Compl. ¶ 4.)

Nine days after the blog was posted, Dr. Tuli's attorneys sent Mr. Votour a letter demanding that the blog be taken down.[4]  (Compl. Ex. B.)  Mr. Votour refused.  (Compl. ¶ 17; Compl. Ex. A at 8.)  Assuming that Dr. Tuli was satisfied with his response, Mr. Votour went on with his life, posted no additional blogs about Dr. Tuli, pursued a Master's degree, moved to South Carolina, and is currently fighting off creditors for the debts incurred during his wife's illness.  (Compl. Ex. A at 3, 23; Compl. ¶ 5.)  Nearly three years later – with no further contact from Dr. Tuli – Dr. Tuli engaged new counsel to file this suit.  Her Complaint for defamation, which offers no explanation for her three year delay in challenging the blog, seeks both to enjoin Mr. Votour to take down the blog and to collect at least $100,000 in damages.[5]  (Compl. Prayer for Relief; Civil Action Cover Sheet.)

Dr. Tuli's Complaint for defamation is grounded upon the following six statements plucked out of context from the twenty page blog post, the first three of which identify statements made by Dr. Tuli's medical colleagues:

> *Statement 1*: "[S]everal doctors at the Brigham had told us Dr. Tuli was to blame for Lyn's stroke.  One neurosurgical resident even told me… 'I hope you realize you are bringing home the equivalent of a new pet.'" (Compl. ¶ 10.)

> *Statement 2*: "The doctor's and staff at Spaulding [Rehabilitation Hospital] urged me to consider filing a lawsuit against Dr. Tuli and the Brigham."  (Compl. ¶ 11.)

> *Statement 3*: "*The surgeon who saved Lyn's life at Mass General Hospital* told me he had never taken such a deceased organ [Ms. Votour's colon] out of a living person before in his entire career.  He then *asked me 'Why did you let the Doctor at Brigham do this to your wife?' … as if I had a choice.  I told him to ask Dr. Tuli why she had done it to her.  I am sure he did not*."  (Compl. ¶ 12; Ex. A at 20 (emphasis supplied for portion of statement alleged to be defamatory).)

---

[4]     The attorneys who sent this letter (Compl. Ex. B) are the same attorneys that represented Dr. Tuli in her suit against Brigham and Women's Hospital.  *Tuli*, 656 F.3d at 33.

[5]     Mr. Votour has taken down the blog.  (Am. Answer ¶ 6.)  Thus, this case can only be about damages against Mr. Votour, who is heavily in debt (Compl. Ex. A at 23), since any claim for injunctive relief would be moot.

*Statement 4*: "I will never forget watching Lyn from outside the ICU [after her first surgery as part of the chordectomy] as she looked at her face in a small mirror one last time the night before contemplating calling it off.  By then her chin had healed enough for the next phase, but a large bruise had appeared mysteriously on her buttock following the first surgery.  *Dr. Tuli said not to worry, it was just a fluid buildup from the first round and it would be ok*."  (Compl. ¶ 13; Ex. A at 14 (emphasis supplied for portion of statement alleged to be defamatory).)

*Statement 5*: "Test after test ordered by Dr. Tuli failed to show any reason for the strokes other than the surgery itself.  It seemed to be her mission to come up with a reason that took the blame from her, although Lyn and I did not blame her.  In fact she told Lyn and I that she believed her strokes had been caused by a tear in her heart which had allowed a clot to pass through the brain blood barrier.  She told us that any further surgeries would put Lyn at risk of another stroke.  This was to have a great impact later… in fact that simple statement almost killed Lyn."  (Compl. ¶ 14.)

*Statement 6*: "At the age of 51, I have lost my wife of twenty eight years, not to cancer but to indifference and egotism."  (Compl. ¶ 15.)

As set forth below, none of these six statements, either collectively or separately, constitutes actionable defamation.  Therefore, based on the face of the Complaint and as a threshold matter of law, Mr. Votour is entitled to judgment in his favor on all claims.[6]

## III.  ARGUMENT

### A.  Standards Governing Motions for Judgment on the Pleadings

Judgment must enter in favor of Mr. Votour on each of the allegedly defamatory statements because the Complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009).  When, as here, a motion for judgment on the pleadings under Rule 12(c) is employed to test the plausibility of a complaint, it must be evaluated as if it were a motion to dismiss under Rule 12(b)(6).  *See Grajales v. P.R.*

---

[6]      Mr. Votour reserves the right to assert all other defenses not presented here at a later stage in this case.

*Ports Authority*, 682 F.3d 40, 44 (1st Cir. 2012).  Thus, the Complaint must contain factual

allegations that raise a right to relief above the speculative level.  *Id.*

  **B.**  **Standards Governing Defamation Claims Under Massachusetts Law**

  In Massachusetts, to establish a claim for written defamation, or libel, a plaintiff must

prove that "defendants were at fault for the publication of a false statement regarding the

plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused

economic loss or is actionable without proof of economic loss."  *Amrak Prods., Inc. v. Morton*,

410 F.3d 69, 72 (1st Cir. 2005).  Relevant to this motion, two categories of statements are not

actionable and thus cannot form the basis of a defamation claim: (1) statements that are not

capable of a defamatory meaning and (2) statements of opinion.

  **1.**  **Statements That Are Not Susceptible of a Defamatory Meaning Are Not Actionable**

  In actions for defamation, one threshold issue is whether a statement is reasonably

susceptible of defamatory meaning.  *Foley v. Lowell Sun Publ'g Co.*, 404 Mass. 9, 11 (1989);

*Damon v. Moore*, 520 F.3d 98, 103 (1st Cir. 2008); *see also McKee v. Laurion*, 825 N.W.2d 725,

731-33 (Minn. 2013) (applying similar Minnesota law and holding number of statements about

doctor in an online review were incapable of conveying defamatory meaning).  Only a false

statement that "would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the

minds of any considerable and respectable segment in the community," would be considered

defamatory.[7]  *Phelan v. May Dep't Stores Co.*, 443 Mass. 52, 56 (2004).  The communication

must be interpreted in context, leading a reasonable reader to conclude that it conveyed

defamatory meaning.  *Damon*, 520 F.3d at 104-05.  "Whether a particular communication is

---

[7]  For example, courts have opined that statements suggesting that one lacks a necessary professional characteristic can be considered defamatory.  *See Reilly v. Associated Press*, 59 Mass. App. Ct. 764, 778 (Mass. App. Ct. 2003).

defamatory is a question of law for the courts." *Ball v. Wal-Mart, Inc.*, 102 F. Supp. 2d 44, 49

(D. Mass. 2000); *Greenspan v. Random House, Inc.*, 859 F. Supp. 2d 206, 221 (D. Mass. 2012).

**2.**        **Statements of Opinion Are Not Actionable**

The First Amendment generally protects statements of opinion from defamation claims.

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974); *Greenspan*, 859 F. Supp. 2d at 223

("Defamation claims cannot be founded on expressions of opinion.").[8]  Whether a statement is a

factual assertion or an opinion is a question of law if the statement unambiguously constitutes

either fact or opinion.  *Myers v. Bos. Magazine Co.*, 380 Mass. 336, 339-41 (1980).

In general, the following categories of statements are considered non-actionable as

opinions: (1) statements that cannot be proven false, *Phantom Touring, Inc. v. Affiliated Publ'ns*,

953 F.2d 724, 727 (1st Cir. 1992), (2) statements that cannot be reasonably interpreted as stating

actual facts about an individual, such as "loose, figurative or hyperbolic language," *Milkovich v.

Lorain Journal Co.*, 497 U.S. 1, 20-21 (1990), and (3) statements that, from their context, negate

the impression that they are factual, *Phantom*, 953 F.2d at 729.  However, "a cause of action for

defamation may still be sustained where an opinion implies the allegation of undisclosed

defamatory facts as the basis for the opinion."  *Greenspan*, 859 F. Supp. 2d at 224 (citation

omitted); *see also Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 127 (1st Cir. 1997).

Conversely, the First Circuit has held that courts should also consider whether the defendant has

provided information from which readers might draw contrary conclusions.  In these

circumstances, where different "sides of the issue" are presented and the statement "reasonably

could be understood only as [the author's] personal conclusion about the information presented,"

such statements are inactionable opinions.  *Phantom*, 953 F.2d at 730.

---

[8]      *See also Bose Corp. v. Consumers Union*, 692 F.2d 189, 193-94 (1st Cir. 1982); *Aldoupolis v. Globe Newspaper Co.*, 398 Mass. 731, 733 (1986); *Cole v. Westinghouse Broad. Co.*, 386 Mass. 303, 308-10 (1982).

Under Massachusetts law, a court attempting to distinguish between fact and opinion must examine "the statement in its totality in the context in which it was uttered or published." *Flotech, Inc. v. EI Du Pont de Nemours & Co.*, 814 F.2d 775, 777 (1st Cir. 1987) (citation omitted).  This contextual analysis is critical here.  This case concerns an internet blog posted by a grieving husband who had recently lost his wife.  (Compl. ¶¶ 7-8.)  A number of courts have emphasized that statements appearing on the internet or personal social media typically contain only statements of opinion, not fact.  As the Delaware Supreme Court observed, "[b]logs and chat rooms tend to be vehicles for the expression of opinions; by their very nature, they are not a source of facts or data upon which a reasonable person would rely."  *Doe v. Cahill*, 884 A.2d 451, 465 (Del. 2005).[9]  This is particularly true where, as here, Mr. Votour included a specific disclaimer that cautioned that his blog reflected "*simply the opinions of Gary Votour*." (Compl. Ex. A at 28.)  *See Yohe v. Nugent*, 321 F.3d 35, 41 (1st Cir. 2003) (noting that court "must give weight to cautionary terms used by the person publishing the statement"); *see also Tener v. Cremer*, 2012 N.Y. Misc. Lexis 3721, at *11-12, 2012 NY Slip. Op. 32022 (N.Y. Sup. Ct. Aug. 1, 2012) (noting that website's terms of usage, which warned that the website's "[c]ontent include[s] statements of opinion and not statements of fact," put reader "on notice that the postings contained on such website are mere opinions, and not based upon facts" and thus statements were not actionable).[10]

Courts have also held expressions of grief to be opinions.  *See Gonzalez v. Gray*, 69 F. Supp. 2d 561, 568 (S.D.N.Y. 1999) (finding inactionable widower's statement about doctor that

---

[9]     *See also Rocker Mgmt., LLC v. Doe*, 2003 WL 22149380, at *2 (N.D. Cal. May 29, 2003) (noting that in online forum, "readers are unlikely to view messages posted anonymously as assertions of fact."); *SPX Corp. v. Doe*, 253 F. Supp. 2d 974, 980-81 (N.D. Ohio 2003) (dismissing defamation case, noting that "reasonable reader would not view the blanket, unexplained statements at issue [on message board] as 'facts' … on such an open and uncontrolled forum"); *Global Telemedia Int'l, Inc. v. Doe*, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001) (general tone, context, style and content of the postings in chat room "strongly suggest that they are the opinions of the posters").

[10]     Although a disclaimer alone is not sufficient to render a statement inactionable, *see Garrett v. Tandy Corp.*, 295 F.3d 94, 104-05 (1st Cir. 2002), the Court must still "give weight" to cautionary terms.  *Cole*, 386 Mass. at 309.

"[t]his guy had killed her.  He had lied to her" and "All of this hope that he was pumping her full

of was just slime" because "[a] reasonable viewer would understand that [the defendant's]

statements are not statements of fact, but represent the opinion of a distraught widower who

recently lost his wife to a terrible illness"); *Reilly v. Associated Press*, 59 Mass. App. Ct. 764,

771 (Mass. App. Ct. 2003) (statements that veterinarian provided "sloppy," "lazy" treatment and

caused dog's death were inactionable statements "uttered by a distraught pet owner").

### C.     Each of the Challenged Statements is Inactionable

Each of the six statements that Dr. Tuli challenges is not actionable because it is (1) not

susceptible to defamatory meaning and/or (2) protected as a statement of opinion.

### 1.     Statement 1 is Not Defamatory and is an Opinion

Dr. Tuli first challenges Mr. Votour's statement that "several doctors at the Brigham had

told us Dr. Tuli was to blame for Lyn's stroke.  One neurosurgical resident even told me… 'I

hope you realize you are bringing home the equivalent of a new pet.'"  (Compl. ¶ 10.)

The first sentence of this statement is an inactionable opinion because it represents a

subjective evaluation of Dr. Tuli's surgical performance, one that is incapable of proof of truth or

falsity.  Subjective statements that a professional performed poorly or incompetently are

inherently statements of opinion that are incapable of objective proof.  For example, the Ninth

Circuit, in a case involving an attorney who was accused of botching a murder trial, held that

such assessments of that attorney's performance at trial were inactionable.  *See Partington v.*

*Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).[11]  The court explained:

> We conclude that negative statements concerning a lawyer's
> performance during trial, even if made explicitly, are generally not
> actionable since they are not ordinarily 'susceptible of being
> proved true or false.'  . . .  [A]ssessments of a lawyer's trial
> performance are inherently subjective and therefore not susceptible

---

[11]     The First Circuit has cited this case favorably.  *See Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002).

> of being proved true or false.  Opinions vary significantly
> concerning what skills make a good trial lawyer and whether a
> particular individual possesses them.  There is no objective
> standard by which one can measure an advocate's abilities with
> any certitude or determine conclusively the truth or falsity of
> statements made regarding the quality of his or her performance.

*Id.* at 1157-58 (citing *Milkovich*, 497 U.S. at 21); *see also Quilici v. Second Amendment Found.*, 769 F.2d 414, 418 (7th Cir. 1985) (concluding that criticisms of an attorney's performance "are more in the nature of opinions on performance rather than statements of fact."); *Metcalf v. KFOR-TV, Inc.*, 828 F. Supp. 1515, 1530 (W.D. Okla. 1992) (finding statement that questioned whether a doctor was "qualified to do breast surgery" was inactionable opinion because it was an "evaluative, judgmental statement not verifiable as true or false").

The First Circuit's decision in *Phantom* is in accord with this rule that the First Amendment protects critical subjective evaluations of professionals because they are not susceptible of being verified as true or false.  In that case, the First Circuit held that a statement alleging that a theater production was "fake" and "phony" is "unprovable, since those adjectives admit of numerous interpretations."  *Phantom*, 953 F.2d at 728; *see also Moldea v. New York Times Co.*, 22 F.3d 310, 316 (D.C. Cir. 1994) ("*Moldea II*") (finding criticisms of a journalist's "sloppy journalism" and unprofessional techniques are not actionable in part because "[r]easonable minds can and do differ as to how to interpret a literary work.").

The result should be the same here.  In his blog, Mr. Votour relayed the opinion of "several doctors" who apparently believed, in their medical opinion, that Dr. Tuli botched Ms. Votour's surgery.  Such a statement is the type of subjective opinion that is incapable of proof. *See Metcalf*, 828 F. Supp. at 1532 (finding that second doctor's opinion that "the cause of the [patient's] bleeding was probably local in nature, and probably due to the surgery [performed by plaintiff doctor]" was, viewed in context, an inactionable opinion of a medical professional).

- 11 -

This result – that a subjective opinion is being proffered by the doctors – is also compelled by the fact that Mr. Votour elsewhere provided contrary, non-defamatory facts and opinions from which his readers could draw their own conclusions (although the Complaint ignores these statements). Specifically, Mr. Votour wrote that, even in light of these doctors' opinions, he did not blame Dr. Tuli for causing his wife's strokes. (Compl. Ex. A at 16, 24.) He also noted that a number of tests performed on his wife to determine the cause of the stroke proved indeterminate. (Compl. Ex. A at 16; Compl. Ex. E at 21.) *See Riley v. Harr*, 292 F.3d 282, 292 (1st Cir. 2002) (finding statements inactionable where writer provides competing opinions or information "from which readers might draw contrary conclusions") (citations omitted). Because the readers are left to draw their own conclusions from this information,[12] it is clear that what is being offered is the doctors' own subjective theory, which is not actionable.[13]

Nor does Mr. Votour's attribution of this opinion to "several doctors" somehow transform this first sentence into an actionable statement because the reference to these doctors does not contribute to the allegedly defamatory nature of this sentence. *See McKee*, 825 N.W.2d at 733 (holding that attribution of opinion that doctor was a "real tool" to a nurse in online review of physician does not make statement otherwise actionable because "attributing the statement to an unidentified nurse does not add defamatory meaning to the statement"); *Seelig v. Infinity Broad. Corp.*, 119 Cal. Rptr. 2d 108, 118-19 (Cal. Ct. App. 2002) (noting that attribution of derogatory statement to plaintiff's ex-husband did not make statement actionable).

---

[12] Indeed, comments left on the blog by readers drive home this point. One commenter purporting to be a doctor responded that this stroke was "likely" due to a congenital condition, not error. (Compl. Ex. E at 21.)

[13] For the same reasons, and viewing the article as a whole, it is implausible that this statement was capable of defaming Dr. Tuli. Where the author twice exculpates Dr. Tuli from causing the stroke, a reasonable reader could not view these statements as being defamatory. *Foley*, 404 Mass. at 11-12 (affirming dismissal where text of article accompanying the contested headline made clear that plaintiff had been arrested, not convicted, for assault). For this reason, this case is distinguishable from the Massachusetts Appeals Court's recent decision in *Scholz v. Delp*, in which the court noted that the defendant "concede[d]" that statements assigning blame for her ex-husband's suicide to plaintiff conveyed a defamatory meaning. 2013 Mass. App. LEXIS 83, at *8 (Mass. App. Ct. May 14, 2013) (finding issue of fact regarding which speaker was "responsible for the defamatory nature" of statements).

The last part of this statement – that a resident described Ms. Votour as "the equivalent of a new pet" – is also inactionable. Such a statement is not plausibly capable of defaming Dr. Tuli. Taken in its full context, this statement is one of many descriptions of Ms. Votour's medical difficulties that Mr. Votour provides on an internet blog and in a moment of grief. *Foley*, 404 Mass. at 11-12 (affirming dismissal of defamation claim where text of article accompanying the contested headline made clear that plaintiff had been arrested, not convicted, for assault). If anything, such a description of Ms. Votour would only tend to defame Ms. Votour. Regardless, such a colorful description of Ms. Votour, particularly in the context of a blog post, is the type of imprecise, figurative statement that is protected as opinion: whether Ms. Votour was, in fact, a "new pet" is incapable of objective proof. *See Phantom*, 953 F.2d at 728 (finding description of theater performance as "a rip-off, a fraud, a scandal, a snake-oil job" inactionable).

### 2.      Statement 2 is Not Defamatory and is an Opinion

Dr. Tuli next challenges the statement: "[t]he doctor's and staff at Spaulding [Hospital] urged me to consider filing a lawsuit against Dr. Tuli and the Brigham." (Compl. ¶ 11.)

This statement, appearing in a blog, is a non-actionable opinion. Whether or not Dr. Tuli should have been sued for malpractice is a statement of opinion that cannot be proven true or false; it is a subjective assessment of Dr. Tuli's skill in performing this procedure. *See Partington*, 56 F.3d at 1157-58; *Phantom*, 953 F.2d at 728; *see also supra* at 10-11. Furthermore, the Complaint ignores contrary facts and opinions that would allow the reader to draw his own conclusions about whether Dr. Tuli should have been sued for malpractice. *See Riley*, 292 F.3d at 292. Most notably, Mr. Votour twice emphasized that he did not blame Dr. Tuli for his wife's strokes. Mr. Votour noted that a number of inconclusive tests had been done on his wife after the strokes, and he also relayed Dr. Tuli's own opinion that the strokes were not caused by the surgery. From this information, the reader could well disagree with the subjective

conclusions of the doctors and staff at Spaulding.  Indeed, Mr. Votour drew his own dissenting

conclusion: he decided not to sue Dr. Tuli for malpractice.[14]  (Compl. ¶ 4; Ex. A at 20.)

Moreover, the ascription of this opinion to "doctor's and staff" is itself inactionable

because the attribution is incapable of conveying defamatory meaning.  *See supra* at 12.

### 3.     Statement 3 is Not Defamatory and is an Opinion

Third, Dr. Tuli asserts that the following statement is defamation: "*The surgeon who

saved Lyn's life at Mass General Hospital* told me he had never taken such a deceased organ

[Ms. Votour's colon] out of a living person before in his entire career.  He then *asked me 'Why

did you let the Doctor at Brigham do this to your wife?' ... as if I had a choice.  I told him to ask

Dr. Tuli why she had done it to her.  I am sure he did not*."  (Compl. ¶ 12; Ex. A at 20 (emphasis

supplied for portion of statement alleged to be defamatory).)

Viewed in its full context, this statement is also a non-actionable opinion.  In this

passage, Mr. Votour relays the history of his wife's bowel obstructions and her colectomy.  The

doctor's question to Mr. Votour – why he let Dr. Tuli "do this to your wife" – and Mr. Votour's

response – questioning whether he had "a choice" and to reflect the question back to the

physician – are precisely the type of imprecise rhetorical questions or expressions that are

protected by the First Amendment.  *See Phantom*, 953 F.2d at 728 (finding inactionable

description of theater performance as "a rip-off, a fraud, a scandal, a snake-oil job"); *Myers*, 380

Mass. at 341 (concluding that statement in a satirical magazine article that a sports announcer

was "enrolled in a course for remedial speaking" [he was not so enrolled] was opinion).  It is

impossible to prove or disprove these statements because the phrases used as part of this

colloquy ("this," "as if I had a choice," and "it") are too imprecise.  What is clear from the

omitted context is that this is an off-hand dialogue, full of imprecise expression that is being

---

[14]     In light of this context, it is implausible that Statement 2 defamed Dr. Tuli.  *See supra* at 12 n.13.

recounted secondhand in a blog written by a grieving widower.  No reasonable reader could interpret this as conveying a statement of fact.  But even if this statement were read out of context and contorted into a statement implying that Dr. Tuli, a neurosurgeon, did something that harmed Ms. Votour's colon – and that is not obvious from the full context – such a statement would be protected as a subjective opinion of the doctor.[15]  *See Metcalf*, 828 F. Supp. at 1532 (finding patient's and a second doctor's statements about cause of patient's bleeding post-surgery were an implied critique of plaintiff doctor's initial diagnosis, but that such statements were opinions).

Furthermore, the attribution of this statement to a "surgeon" does not make this statement actionable because such attribution does not add defamatory meaning.  *See supra* at 12.

### 4.       Statement 4 is Not Defamatory and is an Opinion

Dr. Tuli next claims that Mr. Votour's statements concerning a bruise that appeared on his wife's buttocks after her first surgery was defamatory.  Mr. Votour, in discussing this bruise, wrote that after the first surgery, "*Dr. Tuli said not to worry, it was just a fluid buildup from the first round and it would be ok*."  (Compl. ¶ 13.)

Such a statement about a bruise cannot be defamatory of Dr. Tuli, because a reasonable reader could not understand the diagnosis of a bruise as casting her in a negative light.  Nowhere does Mr. Votour blame Dr. Tuli for causing this "fluid buildup."  Nowhere does Mr. Votour suggest that Dr. Tuli failed to treat this bruise.  Nowhere does Mr. Votour imply that Dr. Tuli misdiagnosed this fluid buildup.  Nowhere does Mr. Votour impugn her medical opinion.  Instead – as is clear from the surrounding text from which Dr. Tuli selectively cites – Mr. Votour

---

[15]      In addition, in light of this context, it is implausible that Statement 3 defamed Dr. Tuli.  *See supra* at 12 n.13.

was describing his wife's harrowing surgical odyssey, in particular the gruesome nature of her procedure, and relaying the last moments that they had together before her strokes.[16]

The Minnesota Supreme Court recently confronted a very similar situation where the son of a doctor's former patient posted a negative review of the doctor online; the poster, dissatisfied with the manner of care that his father had received, reported that the doctor had opined that his father did not "need therapy" to treat his condition (a stroke). *McKee*, 825 N.W.2d at 732. The court held that such a statement, which relayed the doctor's medical opinion, was not "capable of a defamatory meaning." *Id.* Doctors, the court observed, routinely evaluate and treat patients and render diagnoses for these patients; thus, a mention of such a medical opinion, even in the context of a negative review, could not convey a defamatory meaning as a matter of law. *Id.*

Furthermore, even if this statement could somehow be twisted into a silent critique of Dr. Tuli's competency as a physician or her diagnosis of the bruise, such a statement would be an inactionable opinion. *See Metcalf*, 828 F. Supp. at 1532 (finding patient's and a second doctor's statements about cause of patient's bleeding post-surgery were an implied critique of plaintiff doctor's initial diagnosis, but that such statements were inactionable as opinions).

**5.     Statement 5 is Not Defamatory and is an Opinion**

Dr. Tuli also asserts that the following statement is actionable:

> Test after test ordered by Dr. Tuli failed to show any reason for the strokes other than the surgery itself. It seemed to be her mission to come up with a reason that took the blame from her, although Lyn and I did not blame her. In fact she told Lyn and I that she believed her strokes had been caused by a tear in her heart which had allowed a clot to pass through the brain blood barrier. She told us that any further surgeries would put Lyn at risk of another stroke. This was to have great impact later… in fact that simple statement almost killed Lyn." (Compl. ¶ 14.)

---

[16]     Mr. Votour relays details about his wife's recovery from the first surgery (including another fluid buildup), and he discusses the manner in which surgeons would perform the second surgery. (Compl. Ex. A at 12-14.)

This statement is incapable of conveying any defamatory meaning against Dr. Tuli, particularly where Mr. Votour emphasized that he did not blame her for causing his wife's strokes.  Indeed, the vast majority of this statement concerns medical opinions that Dr. Tuli relayed to Mr. Votour and his wife, statements that are innocuous.  The fact that tests did or did not reveal the cause of Ms. Votour's strokes does not cast Dr. Tuli in a negative light.  *See McKee*, 825 N.W.2d at 732 (finding statements relaying doctor's opinion not "capable of a defamatory meaning that would harm [the doctor] in the eyes of the community.").

However, to the extent that Dr. Tuli alleges that this statement somehow implies that Dr. Tuli's medical opinion was wrong (or that Mr. Votour disagreed with it), such an allegation would make this statement a protected opinion.[17]  *See Metcalf*, 828 F. Supp. at 1532; *supra* at 16. At worst, this entire paragraph presents both sides of the issue and allows the reader to draw his own conclusions: Dr. Tuli's tests and the results are discussed (not just in this paragraph but in the entire blog); Mr. Votour affirms that he did not blame Dr. Tuli for the strokes; and Mr. Votour states his conclusion, an opinion that his wife's reluctance to undergo additional surgeries upon the advice of Dr. Tuli had an adverse consequence (*i.e.*, the delay in removing Ms. Votour's diseased colon).  Such opinions are inactionable.  *See Riley*, 292 F.3d at 289 (holding statement inactionable as opinion where writer outlined facts, making it clear "that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions").

### 6.        Statement 6 is an Opinion

Plaintiff asserts that Mr. Votour's statement that "[a]t the age of 51, I have lost my wife of twenty eight years, not to cancer but to indifference and egotism" is defamatory.  (Compl. ¶

---

[17]        The statement that Dr. Tuli's "statement almost killed Lyn" is also the type of rhetoric that is inactionable. This is especially true in the context of a blog, where hyperbole and opinion is the norm.  It is obvious from context that Mr. Votour believed that Ms. Votour's illness – and her decision to remove her feeding tube – caused her death. *See Gonzalez*, 69 F. Supp. 2d at 568 (statements about doctor by widower were not actionable opinions).

15.)  Such imprecise rhetorical flourish – particularly appearing in an online blog post that

purported to reflect its grieving author's opinions – is pure opinion and inactionable.[18]

Mr. Votour's lengthy blog explains that his wife suffered from bone cancer, two strokes,

a diseased colon, and severe infections, and he noted that that Ms. Votour made the decision to

terminate her own life by removing her feeding tube.  From the full context, it is impossible for

any reasonable reader to conclude that Mr. Votour believed that Dr. Tuli's "indifference" or

"egotism" actually *caused* Ms. Votour's death, let alone that he was informing readers that Dr.

Tuli's demeanor killed his wife.  Instead, he was grieving his wife's loss and conveying his

opinion through colorful, imprecise rhetoric that Dr. Tuli was callous and egotistical because she

would not give him an hour of her time and that the manner of her care was indifferent.  *See*

*Gonzalez*, 69 F. Supp. 2d at 568 (statements of "distraught widower who recently lost his wife to

a terrible illness" inactionable opinions); *Reilly*, 59 Mass. App. Ct. at 771 (to similar effect).

**D.      Alternatively, the Incremental Harm Doctrine Bars Plaintiff's Suit**

As an alternative basis for dismissing this case – *i.e.*, if the Court finds that the

challenged statements, viewed in the entire context of the blog, are plausibly capable of

defamatory meaning or not statements of protected opinion – Mr. Votour submits that the

incremental harm doctrine bars this suit.  In general, "[t]he incremental harm doctrine reasons

that when unchallenged or non-actionable parts of a particular publication are damaging, another

statement, though maliciously false, might be non-actionable on the grounds that it causes no

harm beyond the harm caused by the remainder of the publication."  *Church of Scientology Int'l*

*v. Time Warner, Inc.*, 932 F. Supp. 589, 593 (S.D.N.Y. 1996); *Herbert v. Lando*, 781 F.2d 298,

---

[18]      *See Letter Carriers v. Austin*, 418 U.S. 264, 284-86 (1974) (finding use of word "traitor" in reference to union "scab" not basis for a defamation action since used "in a loose, figurative sense" and was "merely rhetorical hyperbole"); *Greenbelt Coop. Publ'g Assn., Inc. v. Bresler*, 398 U.S. 6, 13-14 (1970) (rejecting contention that liability could be premised on notion that word "blackmail" implied the developer had committed the crime of blackmail); *McKee*, 825 N.W.2d at 733 (dismissing defamation case where defendant posted online review of doctor that called doctor "a real tool," finding that such a statement was an opinion).

311 (2d Cir. 1986) ("If that [incremental] harm is determined to be nominal or nonexistent, the statements are dismissed as not actionable."). This doctrine permits the Court to dismiss a claim on the grounds that the disputed statements, even if false, do not harm plaintiff's reputation beyond the harm inflicted by the other published statements. *Brown v. Hearst Corp.*, 54 F.3d 21, 26 (1st Cir. 1995) (affirming summary judgment on grounds that challenged statements do not "add[] measurably" to the taint of the non-actionable statements); *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 210 (1st Cir. 2006) (noting that district court instructed jury on incremental harm);[19] *Robinson v. Globe Newspaper Co.*, 26 F. Supp. 2d 195, 201 & n.4 (D. Me. 1998) (finding incremental harm doctrine "persuasive").

The First Circuit and a court in this district have recently observed that the question of whether this doctrine applies in Massachusetts is "open."[20] *See Mandel*, 456 F.3d at 210 n.6 (noting that application of incremental harm doctrine was "open" issue in Massachusetts); *Noonan v. Staples, Inc.*, 707 F. Supp. 2d 85, 90 (D. Mass. 2010) (refraining from applying doctrine in the absence of controlling authority from state courts); *but see Brown*, 54 F.3d at 26 (finding inactionable one statement that did not "add[] measurably" to sting of other statements). However, it is reasonably clear that the Massachusetts SJC, if faced with the question directly, would adopt the incremental harm doctrine, since it has adopted the closely-related doctrines of the libel-proof plaintiff, *see Jackson v. Longcope*, 394 Mass. 577, 577, 582 (1985), and "substantial truth," *see Noonan v. Staples*, 556 F.3d 20, 28 (1st Cir. 2009).[21]

---

[19]     Given that the jury found incremental harm, the *Mandel* Court declined to address "the (apparently open) question of whether the incremental harm doctrine is part … of Massachusetts law." *Id.* at 210 n.6.

[20]     Mr. Votour submits that this Court can and should apply the doctrine in his favor, because it is reasonably clear that Massachusetts courts would do so. To the extent, however, that this Court – like the Court in *Noonan*, 707 F. Supp. 2d at 90 – is unsure as to whether to apply the doctrine because no state court has done so, it should exercise its *sua sponte* discretion to certify to the SJC the question of law: does Massachusetts recognize the incremental harm doctrine as a defense to a claim of defamation. *See In re Engage, Inc.*, 544 F.3d 50, 57 n.10 (1st Cir. 2008) (noting that court may certify question to SJC *sua sponte*).

[21]     *See* Rodney A. Smolla, *Law of Defamation*, June 2009, §§ 5:17, 5:25 (recognizing incremental harm doctrine is "closely related to the issue of substantial truth").

Here, Dr. Tuli's claim is barred because even *assuming* the six challenged statements are false and defamatory, which they are not, it is impossible to see how the rest of blog – none of which is challenged – would not do the same alleged damage.  (Compl. ¶ 24.)  Moreover, this suit and the blog have been the subject of media scrutiny, including in the Boston *Globe*.[22]  In other words, if these six statements were excised from the twenty page blog (plus reader submitted comments), the same alleged harm would have befallen Dr. Tuli.  For example, the following unchallenged statements would, along with the rest of the blog and news coverage, cause the same harm as the challenged statements because they cast her in the same light:

-   Sagun Tuli, I will no longer call you a doctor.

-   What I blame her for is this.. Indifference.  An uncompassionate and noncaring set of decisions made after the surgeries which greatly contributed to Lyn's last decision [her decision to remove the feeding tube].  And in a way, I must blame the entire system of medicine itself for allowing these decisions to rest in the hands of one person, a person with great skill but with an ever greater ego.

-   Sagun Tuli, I accuse you of indifference.

-   Her colon, after all, died while under [Dr. Tuli's] care at The Brigham.

-   But I ask this question, does every patient leave your care with such great loss and pain?

-   If S. Tuli had been a more compassionate person she would have allowed that [a meeting with Mr. Votour].  She isn't and she did not.  Instead she chose to hold herself above reproach…

## IV.   CONCLUSION

As set forth above, Dr. Tuli's Complaint for defamation fails as a matter of law.

Therefore, Mr. Votour is entitled to judgment in his favor on all claims.

---

[22]   Several news sources have discussed this suit and Mr. Votour's blog and the Court.  *See Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time….").  The Boston *Globe* did a write-up about this case and the blog's allegedly defamatory statements on March 31, 2013 (Notice of Removal Ex. C).  Another blog criticized Dr. Tuli for failing to meet with Mr. Votour (Notice of Removal Ex. D).

Respectfully Submitted,

Gary M. Votour

By his attorneys,

/s/ Adam J. Hornstine
George W. Mykulak (BBO No. 365990)
George.Mykulak@wilmerhale.com
Adam J. Hornstine (BBO No. 666296)
Adam.Hornstine@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document, filed through the ECF system, will be sent electronically to the registered participants of record as identified on the Notice of Electronic Filing on May 15, 2013.

/s/ Adam J. Hornstine
Adam J. Hornstine